❏ Original          ❏ Dupl

CLERK'S OFFICE
A TRUE COPY
Feb 06, 2026
s/ MMK

Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| The Person of Michael Bezak (DOB 7/18/1956) | ) ) ) |

Case No.          26-MJ-15

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

Attachment A2

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____02/20/2026_____ *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.   ❏ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____U.S. Magistrate Judge William E. Duffin_____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:   _____02/06/2026 at 1:40 p.m._____          *William E. Duffin*
                                                                                                      *Judge's signature*

City and state:   _____Milwaukee, WI_____          William E. Duffin, U.S. Magistrate Judge
                                                                                                      *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**<u>ATTACHMENT A2</u>**

**Property or Person to Be Searched**

The person of Michael BEZAK (DOB: 07/18/1956).

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means



CLERK'S OFFICE
A TRUE COPY
Feb 06, 2026
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>The Person of Michael Bezak (DOB 7/18/1956) | )<br>)<br>)<br>)<br>)<br>) |

Case No.        26-MJ-15

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A2

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 115 | Threat to Assault a Law Enforcement Officer |

The application is based on these facts:

See Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI Special Agent Jacob Galarowic
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date:    02/06/2026
_____

_____
*Judge's signature*

City and state:   Milwaukee, WI
_____

William E. Duffin, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Jacob Galarowic, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the following premises, vehicle, and person, further described in Attachments A1 and A2 (collectively, "Attachments A"), for the records, information, items, and things described in Attachment B:

> A1.    The premises located at N3595 Red Oak Dr, Campbellsport, Wisconsin 53010, more fully described as a two-story single-family home with stone and tan colored siding, a brown wooden front door, white window frames, and two large bay windows on the front (west) side of the residence. The numbers "3595" are affixed to the stonework on front left of the residence. The search is to include any garages or storage buildings on the property.

> A2.    The person of Michael BEZAK (DOB: 07/18/1956).

2.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3.      Based on the facts set forth in this affidavit, there is probable cause to believe that a violation of 18 U.S.C. § 115 (threat to assault a law enforcement officer) has been committed by Michael J. BEZAK.  Further, there is probable cause to believe that evidence of this crime will be located at the places or property to be searched, as described in Attachment A1 and A2.

## **BACKGROUND**

4.    I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since June 2023. At that time, I was assigned to the White Collar Crime squad where I primarily investigated public corruption matters. I have participated in and conducted investigations of individuals and organizations involved in public corruption allegations. Through these investigations, as well as my training, I am familiar with the manner in which individuals in official positions conceal their activities from the public, and the financial arrangements that they may make to benefit from their corrupt actions. I have participated in interviews of witnesses and in debriefings of Confidential Human Sources involved in white collar offenses and in the concealment of proceeds derived from those criminal acts. I have experience analyzing electronic communications between co-conspirators involved in white collar offenses when those communications are made for the purpose of furthering the alleged illegal activity.

5.    Since June 2025, I have been assigned to the FBI's Milwaukee Area Violent Crime Task Force. This Task Force is a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies, and other violent crime matters, defined under Title 18 of the United States Code. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have assisted in and conducted criminal investigations, participating in surveillance, interviews, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities.

6.    I have experience in the investigation, apprehension, and prosecution of individuals involved in criminal offenses, the use of cellular devices to commit those offenses, and information

2

that can be used by law enforcement to assist in identifying the users of cellular devices and their location. I know from training and experience that cell phone users normally have their cell telephones on them or near them as they go about daily activities.[1] This includes persons involved in criminal activities. Further, I know based on training and experience that persons involved in criminal activity may have more than one cell phone and may use cell phones to communicate with associates. Such communications may be before, during, and after criminal activity has been committed in an area. Therefore, in the course of investigating criminal activity occurring at specific location(s), information concerning the identity of cellular devices at or near the location(s) as well as details about the source and nature of communications by those devices during the relevant time frame can provide evidence that assists law enforcement to identify unknown criminal actor(s).

## **PROBABLE CAUSE**

7.     On or about Sunday, January 11, 2026, at approximately 1:40 PM, BEZAK entered Cabela's parking lot located at 1 Cabela Way, Richfield, Wisconsin. BEZAK was operating a maroon Chevrolet Trailblazer as seen below:

---

[1] I also know that courts have recognized the prevalence of cell phones in daily life. *See Carpenter v. United States*, 585 U.S. 296, 300 (2018) (stating that, as of approximately June 2018, "There are 396 million cell phone service accounts in the United States—for a Nation of 326 million people"); *Riley v. California*, 573 U.S. 373, 395 (2014) (noting that "According to one poll, nearly three-quarters of smart phone users report being within five feet of their phones most of the time").

3





8.     Of note, according to Wisconsin Department of Motor Vehicle Databases, BEZAK is the registered owner of a maroon 2004 Chevrolet Trailblazer bearing Wisconsin license plate 590ZCN.

4

9.     Shortly after entering the Cabela's store, at approximately 1:52 PM, BEZAK briefly approached the customer service counter, then proceeded to the gun library section of the store and browsed firearms. Still-photographs from security cameras are seen below:





10.     At approximately 2:08 PM, BEZAK was greeted by an employee (hereinafter, Employee 1) near the firearms desk. At that time, BEZAK looked over each shoulder, appearing to determine if anyone was around to hear, and asked Employee 1, "What's the best gun to shoot ICE Agents with?" Employee 1 did not respond to BEZAK's statement. BEZAK then asked

5

Employee 1 about a 'Ruger Super Redhawk' with a 5.5 inch barrel and showed Employee 1 a photograph on BEZAK's cellphone of a firearm.

11.     Employee 1, who does not work behind the firearms counter, instructed BEZAK to enter his information into the kiosk at the counter and BEZAK would be placed in the queue for assistance. Shortly thereafter, Employee 1 relayed BEZAK's statement to his chain of command.

12.     At approximately 2:16 PM, BEZAK entered his information (his name and phone number (262) 305-5242) into the kiosk, as seen below:



13.     At approximately 3:04 PM, BEZAK was called to the firearms display counter by a firearms sales specialist (hereinafter, Employee 2). At approximately 3:07 PM, Employee 2 handed BEZAK a Ruger Blackhawk 44 Magnum from the display cabinet. According to Employee 2, BEZAK was interested in knowing if the Ruger would fire 44 special ammunition. Employee 2 referenced a user manual for the firearm and determined that 44 special ammunition could be fired through the firearm. An internet search of a Ruger Blackhawk 44 Magnum provided the following depiction:

6



14.     BEZAK handled and inspected the firearm for approximately one minute, as seen below:



15.     Toward the end of their interaction in looking at the firearm, BEZAK told Employee 2 that he would come back, because he did not bring enough money. Following the interaction with Employee 2, which concluded at approximately 3:14 PM, BEZAK browsed the ammunition aisle until approximately 3:20 PM and left the firearms section of Cabela's.

16.     Upon reviewing the information that BEZAK had entered into the kiosk and video footage obtained from the store's security camera, Employee 1 made a positive identification of

7

BEZAK being the individual who had made the threatening statement against law enforcement. To Employee 1's knowledge, BEZAK did not purchase any firearms that day, and due to the concerning statements made, Cabela's banned BEZAK from purchasing firearms from their store in the future.

17.     On February 4, 2026, investigators checked Wisconsin Department of Transportation (DOT) records which showed BEZAK has a listed address of N3595 Red Oak Dr, Campbellsport, Wisconsin.

18.     On February 5, 2026, investigators searched Fond Dul Lac County Real Estate Tax Records for the address of N3595 Red Oak Dr, Campbellsport, Wisconsin and determined the listed owner was Michael J. BEZAK.

19.     On February 5, 2026, investigators spoke to members of the Fond Du Lac County Sheriff's Office Records Division who advised they have a listed address of N3595 Red Oak Dr, Campbellsport, Wisconsin and phone number (262) 305-5242 for Michael J. BEZAK. The Records Division also indicated Sheriff's Office Deputies from Fond Du Lac County have had several contacts with BEZAK regarding traffic violations.

20.     On February 5, 2026, at approximately 1:20 PM, FBI Special Agents conducting surveillance observed BEZAK leaving the area of his address of N3595 Red Oak Dr, Campbellsport, Wisconsin in his 2004 Chevrolet Trailblazer. Investigators were able to identify BEZAK as the driver and lone occupant of the vehicle.

## TECHNICAL TERMS

21.     Based on my training and experience, I use the following technical terms to convey the following meanings:

> a.  IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address

looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

b. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

c. Storage medium: A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

22.     As described above and in Attachment B, these applications seek permission to search for records that might be found on the premises and vehicles, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

23.     Case agents know that electronic devices, particularly cellular telephones, in these locations will contain evidence. In particular, case agents know that BEZAK presented Employee 1 with a photograph of a firearm from BEZAK's cellular telephone. This indicates that BEZAK either (i) has a firearm similar to the firearm BEZAK intended to purchase on January 11, 2026, or (ii) searched the internet with intent to find a specific type of firearm, to carry out an act of violence against law enforcement – both of which would be stored on BEZAK's cellular telephone, and potentially, on other electronic devices.

9

24.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

25.     *Probable cause.* I submit that if a computer or storage medium is found on the premises and vehicles, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

    a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

    c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

    d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

26.     *Forensic evidence.* As further described in Attachment B, these applications seek permission to locate not only computer files that might serve as direct evidence of the crimes

10

described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the premises and vehicles because:

    a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

    b.  As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating

to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f. I know that when an individual uses a computer the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received;

12

notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

27.    *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media.  Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files.  Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction.  This is true because of the following:

   a.   The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information.  Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

   b.   Technical requirements.  Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.   Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.  The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises.  However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

   c.   Variety of forms of electronic media.  Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

13

28.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant.  The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

29.    Because several people share the premises as a residence, it is possible that the premises will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime.  If it is nonetheless determined that that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

## **CONCLUSION**

30.    Based on the foregoing, I believe BEZAK entered the Cabela's on January 11, 2026, with the intent to purchase a firearm in furtherance of committing violent acts against federal law enforcement, in violation of Title 18, United States Code, Section 115. As such, I also believe there is probable cause to search the premises and person described in Attachments A1 and A2 for fruits, evidence, and instrumentalities of the crime as further described in Attachment B.

14

# ATTACHMENT A1

## Property to Be Searched

The premises located at N3595 Red Oak Dr, Campbellsport, Wisconsin 53010, more fully described as a two-story single-family home with stone and tan colored siding, a brown wooden front door, white window frames, and two large bay windows on the front (west) side of the residence. The numbers "3595" are affixed to the stonework on the front left side of the residence. The search is to include any garages or storage buildings on the property.



**<u>ATTACHMENT A2</u>**

**Property or Person to Be Searched**

The person of Michael BEZAK (DOB: 07/18/1956).

## <u>ATTACHMENT B</u>

*Property to be seized*

I.      All records, documents, evidence, objects, and information relating to violations of 18 U.S.C. § 115 involving Michael BEZAK (DOB: 07/18/1956), on or about January 11, 2026, including:

        a. Firearms
        b. Ammunition
        c. Cellular devices, including but not limited to the cellular device with telephone number (262) 305-5242;
        d. Records and information about possession, custody, and control of firearms and ammunition;
        e. Records and information regarding threats to law enforcement;
        f. Documents, records, or other material reflecting BEZAK or others' intent to commit acts of violence;
        g. Records and information relating to a maroon 2004 Chev Trailblazer assigned VIN: 1GNDT13SX42362995 and/or bearing Wisconsin license plate 590ZCN, registered to Michael BEZAK at N3595 Red Oak Dr, Campbellsport, Wisconsin 53010, including but not limited to purchase paperwork, titles, vehicle registration, and insurance documents.

II.     For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

        a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

        b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

        c. evidence of the lack of such malicious software;

        d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

        e. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

17

f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h. evidence of the times the COMPUTER was used;

i. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k. records of or information about Internet Protocol addresses used by the COMPUTER;

l. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

m. contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disk drives or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

18

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

19